IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 19, 2005

## STATE OF TENNESSEE v. STEVEN ANDREW TIDWELL

**Appeal from the Circuit Court for Madison County**
**No. 03-441     Roy B. Morgan, Jr., Judge**

_____

**No. W2004-01820-CCA-R3-CD  - Filed July 21, 2005**
_____

The defendant, Steven Andrew Tidwell, tried for aggravated burglary and theft of property between $500 and $1,000, was convicted of theft. The trial court imposed a two-year sentence to be served in the Department of Correction. In this appeal of right, the defendant argues that the evidence was insufficient, that the trial court erred by ruling that the state could cross-examine him with a prior burglary offense for which he had received judicial diversion, and that the sentence is excessive. The judgment of the trial court is affirmed.

### Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed

GARY R. WADE, P.J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ALAN E. GLENN, JJ., joined.

Ramsdale O'DeNeal, Jr., Jackson, Tennessee, for the appellant, Steven Andrew Tidwell.

Paul G. Summers, Attorney General & Reporter; Preston Shipp, Assistant Attorney General; and Jody S. Pickens, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

At approximately 7:30 p.m. on March 25, 2003, Dr. James E. Selby, the Vice President for Student Services at Jackson State Community College, encountered the defendant in a second-floor computer lab located in the Nelms Building on campus. As he walked past the lab, he saw the defendant through a window in the door "walking in a crouched position" and carrying a computer CPU (central processing unit). When Dr. Selby opened the door, the defendant hurriedly placed the component behind the cabinet of a television stand. Another computer had also been unplugged and removed from its mounting. When asked what he was doing, the defendant hesitated, then explained that someone who had identified himself as Ryan Sparks with the school's Office of Information Technology had asked him to get "some computers ready to be taken out of [there]" because they needed to be picked up for repair. The defendant, who was a student at the college at the time of the offense, provided his identification card for Dr. Selby and then left at his request. After calling

security to assure that the lab was locked, Dr. Shelby learned that the defendant, who resided fifty miles away, did not have a class on campus that evening and did not have any of his scheduled courses in the Nelms Building.

At trial, Diane Harris, Jackson's State's Director of Human Resources and Affirmative Action, testified that computerized records dating back to 1985 indicated that the college had never employed anyone named Ryan Sparks. Frances Edmondson, the Registrar of the school, testified that the College had enrolled three students with similar names in the past: Robert G. Sparks in the fall of 1989; Robert Ryan Sparks in the fall of 1998 and spring of 1999; and Ryan Lee Sparks in the fall of 2003. She determined that no one named Ryan Sparks was enrolled in the school in the spring of 2003.

Ryan Lee Sparks testified that he was not a student in the spring of 2003 and that he had never been employed by the Office of Information Technology. Robert Ryan Sparks provided similar testimony. Ryan Keith Sparks, who had never been a student at Jackson State, testified that he had gone to high school with the defendant but had not seen him since graduating in 2001.

Robert Grissom, the Director of the Office of Information Technology, testified that the computer CPUs in question would have been valued at approximately $760 at the time of the offense. Linda Sego, a technical services manager who supervises all of the school's computer technicians, including repair work orders, testified that there was no employee named Ryan Sparks and there was nothing wrong with the two computers that had been moved by the defendant.

The defendant testified that at the time of the offense, he was a student at Jackson State, where he had been enrolled for approximately a year and a half. He stated that during that time, he was also employed at a Hardee's restaurant in Selmer, where he lived, and at an IHOP restaurant in Jackson. He claimed that on the day of the offense, he had gone to Jackson to do some shopping at the mall and decided to stop by the computer lab to type an article he needed to summarize for class. It was his testimony that just as he was finishing his paper, a man with a walkie-talkie and a gold name tag that read "Jackson State OIT" and "Ryan Sparks" came into the lab and asked whether the defendant "minded helping him out, he had a lot of work to get done." The defendant testified as follows:

> I thought I'd be a good Samaritan and help him out a little bit. I asked what he needed. He said he had to take two computers out of that lab. They needed to have the hard drive images re-ghosted on them, and he had to take them from there over to the main office at the OIT building, and he had to go get the dolly to put them on and he would be right back, and I said okay. I unhooked one of the two computers and went and set it over in the corner where he had pointed and told me to, "Set them over there. I'll be right back," and at that time was when Dr. Selby came in.

The defendant testified that he had selected the Nelms Building computer lab to work in that evening because he had had a class in that building the previous semester and was familiar with it. The

-2-

defendant admitted a prior burglary offense in McNairy County in February 2003. He also acknowledged that he had a computer at his residence at the time of the offense.

I

Initially, the defendant challenges the sufficiency of the evidence. In a related issue, he also claims that the trial court erred by denying his motion for judgment of acquittal at the close of the state's proof.

Rule 29 of the Tennessee Rules of Criminal Procedure empowers the trial judge to direct a judgment of acquittal when the evidence is insufficient to warrant a conviction either at the time the state rests or at the conclusion of all the evidence. Overturf v. State, 571 S.W.2d 837 (Tenn. 1978). At the point the motion is made, the trial court must favor the opponent of the motion with the strongest legitimate view of the evidence, including all reasonable inferences, and discard any countervailing evidence. Hill v. State, 470 S.W.2d 853 (Tenn. Crim. App. 1971). The standard by which the trial court determines a motion for judgment of acquittal at that time is, in essence, the same standard which applies on appeal in determining the sufficiency of the evidence after a conviction. State v. Ball, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998); State v. Anderson, 880 S.W.2d 720, 726 (Tenn. Crim. App. 1994).

Where a defendant challenges the sufficiency of the evidence, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956); Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). On appeal, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103. "'Knowing' refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." Tenn. Code Ann. § 39-11-302(b).

The defendant admits that he "exercised control" over the school's computers but contends that he did not have the requisite intent to deprive the school of its property. He argues that he was

"assisting, in his mind, an employee of the school who said the computer was in need of repair." In our view, this was a classic credibility question, falling well within the purview of the jury. Dr. James Selby testified that he discovered the defendant moving computers during evening hours at a computer lab on the Jackson State campus. When questioned, the defendant hesitated before providing information that proved to be false. Through the testimony of numerous witnesses, the state introduced evidence that no person named Ryan Sparks, whom the defendant had claimed to be assisting, had ever been employed by the college or was enrolled as a student that semester. Although the defendant denied having been engaged in the theft of the computers, the jury, who observed his demeanor first-hand, accredited the testimony of the state's witnesses, as was its prerogative, and chose not to accredit that of the defendant. See State v. Summerall, 926 S.W.2d 272, 275 (Tenn. Crim. App. 1995). The evidence was sufficient for a rational trier of fact to have found beyond a reasonable doubt that the defendant committed the crime of theft.

II

Next, claiming that "[p]rior bad acts are not admissible in criminal cases," the defendant contends that the trial court erred by permitting the state to cross-examine him regarding a prior burglary offense for which he had received judicial diversion. The state argues that the defendant has waived consideration of the issue by failing to raise it in his motion for new trial and that, in any case, the evidence was properly admitted.

Generally, the failure to present an issue in a motion for new trial results in waiver. Rule 3(e) of the Tennessee Rules of Appellate Procedure provides that for appeals "in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, . . . or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived." Tenn. R. App. P. 3(e); see also State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997) (holding that a defendant relinquishes the right to argue on appeal any issues that should have been presented in a motion for new trial). Whether properly assigned or not, however, this court may consider plain error upon the record under Rule 52(b) of the Tennessee Rules of Criminal Procedure. State v. Ogle, 666 S.W.2d 58 (Tenn. 1984).

Before an error may be so recognized, it must be "plain" and must affect a "substantial right" of the accused. The word "plain" is synonymous with "clear" or equivalently "obvious." United States v. Olano, 507 U.S. 725, 732 (1993). Plain error is not merely error that is conspicuous, but especially egregious error that strikes at the fairness, integrity, or public reputation of judicial proceedings. See State v. Wooden, 658 S.W.2d 553, 559 (Tenn. Crim. App. 1983). In State v. Adkisson, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994), this court defined "substantial right" as a right of "fundamental proportions in the indictment process, a right to the proof of every element of the offense and . . . constitutional in nature." In that case, this court established five factors to be applied in determining whether an error is plain:

(a) The record must clearly establish what occurred in the trial court;

(b) a clear and unequivocal rule of law must have been breached;

(c) a substantial right of the accused must have been adversely affected;

(d) the accused [must not have waived] the issue for tactical reasons; and

(e) consideration of the error must be "necessary to do substantial justice."

Id. at 641-42.  Our supreme court characterized the Adkisson test as a "clear and meaningful standard" and emphasized that each of the five factors must be present before an error qualifies as plain error.  State v. Smith, 24 S.W.3d 274, 282-83 (Tenn. 2000).

The record reflects that on February 14, 2003, the defendant entered pleas of guilt in the McNairy County Circuit Court to theft between $500 and $1,000; burglary; and theft between $1,000 and $10,000.  In that case, the trial court imposed ordered a two-year period of probation pursuant to our judicial diversion statute.  See Tenn. Code Ann. § 40-35-313.  Prior to trial, the state provided notice of its intent to impeach the defendant with the burglary offense.  Because the defendant had received judicial diversion, the trial court considered the issue under Tennessee Rule of Evidence 608, which governs the admissibility of prior bad acts, rather than Tennessee Rule of Evidence 609, dealing with the admissibility of prior convictions.  See State v. Walter Dale Dishman, No. 03C01-9409-CR-00318 (Tenn. Crim. App., at Knoxville, Sept. 26, 1995) (holding that charges dismissed after successful completion of pretrial diversion could be used to impeach witness under Rule 608).  The trial court determined that the burglary offense was admissible for impeachment purposes, stating, "We're dealing with the issue of truthfulness today," and finding that its probative value outweighed the danger of unfair prejudice.

Tennessee Rule of Evidence 608 provides in pertinent part as follows:

(b) Specific Instances of Conduct. Specific instances of conduct of a witness for the purpose of attacking or supporting the witness's credibility, other than convictions of crimes as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, if probative of truthfulness or untruthfulness and under the following conditions, be inquired into on cross-examination of the witness concerning the witness's character for truthfulness or untruthfulness or concerning the character for truthfulness or untruthfulness of another witness as to which the character witness being cross-examined has testified. The conditions which must be satisfied before allowing inquiry on cross-examination about such conduct probative solely of truthfulness or untruthfulness are:

(1) The court upon request must hold a hearing outside the jury's presence and must determine that the alleged conduct has probative value and that a reasonable factual basis exists for the inquiry;

(2) The conduct must have occurred no more than ten years before commencement of the action or prosecution, . . .; and

(3) If the witness to be impeached is the accused in a criminal prosecution, the State must give the accused reasonable written notice of the impeaching conduct before trial, and the court upon request must determine that the conduct's probative

value on credibility outweighs its unfair prejudicial effect on the substantive issues. The court may rule on the admissibility of such proof prior to the trial but in any event shall rule prior to the testimony of the accused. If the court makes a final determination that such proof is admissible for impeachment purposes, the accused need not actually testify at the trial to later challenge the propriety of the determination. . . .

Tenn. R. Evid. 608(b).

The only argument made by the defendant is that "[p]rior bad acts are not admissible in criminal cases." That is an erroneous assertion. <u>See, e.g.</u>, <u>State v. Patton</u>, 593 S.W.2d 913, 919 (Tenn. 1979) (stating that the "extension of [evidentiary rules 608 and 609] so as to provide coverage to criminal defendants is in keeping with the time-honored holding of our courts that, as a general rule, when a criminal defendant 'elects to place himself upon the stand as a witness, he can be treated in all respects as any other witness'"). In this case, the trial court complied with Rule of Evidence 608, holding a jury-out hearing on the matter and making the appropriate findings. The record contains a certified judgment demonstrating that the defendant did indeed plead guilty to burglary, for which he received judicial diversion just prior to committing the offense in this case. The trial court properly determined that the burglary plea was relevant to the defendant's credibility and that its probative value outweighed its unfair prejudicial effect. The trial court excluded the defendant's two theft pleas on the ground that they were too similar to the offense on trial. Further, the trial court limited the state to the following question: "You are the same Steven Tidwell who admitted on February the 14th of 2003 to committing a burglary on April the 20th, 2002?" The defendant replied affirmatively and no extraneous proof was offered. Under these circumstances, there was no error and, therefore, no plain error. The defendant is not entitled to relief.

III

Finally, the defendant claims that the "sentence imposed by the court was extreme and unreasonable." He argues that the trial court should have imposed some form of alternative sentencing, specifically community corrections, and that the $2,500 fine was excessive.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." <u>State v. Ashby</u>, 823 S.W.2d 166, 169 (Tenn. 1991); <u>see</u> <u>State v. Jones</u>, 883 S.W.2d 597, 600 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." <u>State v. Shelton</u>, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

Especially mitigated or standard offenders convicted of Class C, D, or E felonies are, of course, presumed to be favorable candidates "for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). With certain statutory exceptions, none of which apply here, probation must be automatically considered by the trial court if the sentence imposed is eight years or less. Tenn. Code Ann. § 40-35-303(b) (Supp. 2000).

Among the factors applicable to probation consideration are the circumstances of the offense, the defendant's criminal record, social history and present condition, and the deterrent effect upon and best interest of the defendant and the public. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978). The nature and circumstances of the offenses may often be so egregious as to preclude the grant of probation. See State v. Poe, 614 S.W.2d 403, 404 (Tenn. Crim. App. 1981). A lack of candor may also militate against a grant of probation. State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983).

The purpose of the Community Corrections Act of 1985 was to provide an alternative means of punishment for "selected, nonviolent felony offenders in front-end community based alternatives to incarceration." Tenn. Code Ann. § 40-36-103. The Community Corrections sentence provides a desired degree of flexibility that may be both beneficial to the defendant yet serve legitimate societal aims. State v. Griffith, 787 S.W.2d 340, 342 (Tenn.1990). Even in cases where the defendant meets the minimum requirements of the Community Corrections Act of 1985, the defendant is not necessarily entitled to be sentenced under the Act as a matter of law or right. State v. Taylor, 744 S.W.2d 919 (Tenn. Crim. App.1987). The following offenders are eligible for Community Corrections:

> (1) Persons who, without this option, would be incarcerated in a correctional institution;
> (2) Persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;
> (3) Persons who are convicted of nonviolent felony offenses;
> (4) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
> (5) Persons who do not demonstrate a present or past pattern of behavior indicating violence;
> (6) Persons who do not demonstrate a pattern of committing violent offenses; and

Persons who are sentenced to incarceration or on escape at the time of consideration will not be eligible.

See Tenn. Code Ann. § 40-36-106(a).

At the sentencing hearing, the state introduced sworn copies of the McNairy County judgments demonstrating that the petitioner had been granted judicial diversion for the three prior felony offenses in 2003 and the presentence report prepared by the Board of Probation. The defendant did not introduce any proof.

In mitigation, the trial court applied factor number (1), that the defendant's conduct neither caused nor threatened serious bodily injury. See Tenn. Code Ann. § 40-35-113(1). The trial court applied three enhancement factors: (2) that the defendant has a previous history of criminal convictions or criminal behavior in addition to that necessary to establish the appropriate range; (9) that the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community; and (18) that the defendant committed the offense while on school property. See Tenn. Code Ann. § 40-35-114(2), (9), (18). The trial court sentenced the defendant as a Range I offender to two years, the maximum in the range, see Tenn. Code Ann. § 40-35-112(a)(5), to be served in the Department of Correction. The trial court ordered service of the sentence primarily because the defendant failed to successfully complete his judicial diversion program.

In our view, the trial court did not abuse its discretion by ordering service of the two-year sentence. A little over a month before committing this offense, the defendant, after admitting three felonies, had been given the opportunity to clear his criminal record. All he had to do was refrain from criminal conduct. That he did not suggests a resistance to rehabilitation. Under these circumstances, the denial of alternative sentencing was appropriate.

The defendant also contends that the $2,500 fine assessed by the jury and approved by the trial court is excessive. Our constitution prohibits fines over $50 unless approved by the jury. Tenn. Const. art. VI, § 14. A fine imposed by the trial court may not exceed that fixed by the jury. State v. Mahoney, 874 S.W.2d 627, 630 (Tenn. Crim. App. 1993). There are no exceptions to these guidelines unless the defendant waives the constitutional protections or his right to a trial by jury. State v. Martin, 940 S.W.2d 567 (Tenn. 1997); State v. Durso, 645 S.W.2d 753, 754 (Tenn. 1983). This court has jurisdiction to review a fine because it is part of the sentence. See State v. Bryant, 805 S.W.2d 762, 763 (Tenn. 1991). Our review is de novo with a presumption that the determinations made by the trial court are correct. State v. Byrd, 861 S.W.2d 377 (Tenn. Crim. App. 1993).

Here, the jury imposed a $2,500 fine, which was within the permissible range for a Class E felony conviction. See Tenn. Code Ann. § 40-35-111(b)(5) (providing that jury may assess a fine not exceeding $3,000 for Class E felony conviction). It is, of course, well settled that the power to declare the appropriate punishment for a crime falls within the authority of the legislature. Woods v. State, 130 Tenn. 100, 169 S.W. 558 (1914). The imposition of a fine, within the limits set by the

jury, is to be based on the factors provided by the 1989 Sentencing Act; the trial court must consider the defendant's ability to pay the fine, the evidence from the trial, the sentencing hearing proof in regard to the defendant's ability to pay, and other factors of judgment involved in the setting of the total sentence. Bryant, 805 S.W.2d at 766; see Tenn. Code Ann. § 40-35-207(7); see also State v. Marshall, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993) (stating that a defendant's ability to pay "is not necessarily a controlling [factor]"); State v. Michael Westley Portzer, No. 01C01-9208-CC-00252 (Tenn. Crim. App., at Nashville, Aug. 12, 1993).

Tennessee Code Annotated § 40-35-301(b) provides that "when imposing sentence . . . the court shall impose a fine, if any, not to exceed the fine imposed by the jury." The trial court is "obligated to evaluate the fine . . . [and] may not simply impose the fine as fixed by the jury." State v. Michael Wilson, No. 01C01-9602-CC-00073 (Tenn. Crim. App., at Nashville, July 31, 1997). In this case, the trial court did not establish a record to indicate that it considered the applicable factors in approving the fine. Thus, this court is not bound by the presumption of correctness on appeal. State v. Donald Eric Williams, No. 01C01-9405-CR-00165 (Tenn. Crim. App., at Nashville, Dec. 22, 1994).

Nevertheless, the record does not establish why the fine is excessive. The $2,500 fine as recommended by the jury and accepted by the trial judge is not patently excessive. See State v. Miller, 737 S.W.2d 556, 558 (Tenn. Crim. App. 1987). Because Dr. Selby interrupted the theft, there was no need for restitution. The defendant does not claim that the fine is outside of his ability to pay. The amount, on its face, is neither unfair nor inappropriate.

Accordingly, the judgment of the trial court is affirmed.

_____

GARY R. WADE, PRESIDING JUDGE