FRED STEWART AND S. D. STEWART *v.* THE STATE.*

(*Nashville,* December Term, 1931.)

Opinion filed March 5, 1932.

———

*As to necessity of plea in criminal case, see annotation in 13 L. R. A. (N. S.), 811; 45 L. R. A. (N. S.), 664; 8 R. C. L., 108, 109; R. C. L. Perm. Supp., p. 2185.

W. J. Counts, for plaintiff in error.

Nat Tipton, Assistant Attorney-General, for defendant in error.

Mr. Chief Justice Green delivered the opinion of the Court.

Plaintiffs in error were indicted in respect of the killing of one Ewin Smith and have been convicted of murder in the second degree.

██ Smith was a young man about twenty years of age. Fred Stewart was about the same age and S. D. Stewart is a man of middle age, the father of Fred Stewart.

There was a dance in Tullahoma on the night of January 2, 1931, at which the young men were present. During the evening these two boys, in company with some others, went to a woods lot and started a game of craps. Fred Stewart and Ewin Smith became involved in a dispute over the game and had a fight or a scuffle. Some of the boys present say that Ewin Smith merely threw young Stewart down and did not strike him. Stewart says that Ewin Smith and his brother Eugene Smith, who was present, both attacked him (Stewart), threw him down and beat him up pretty badly.

Fred Stewart went to his home near by and the other boys went back to the dance at the house of a man named Muse. In a little while Fred Stewart himself came back to the dance. Shortly thereafter S. D. Stewart, the father, came over to Muse's place.

The Stewart family say that when Fred Stewart got home from the crap game he was disheveled, dirty, had some knots and blood on his head, and gave evidence of having been beaten. They say that young Stewart got a gun and started after the Smith boys but that the elder Stewart took the gun from him and restrained him. Thereafter they say that Fred Stewart washed himself up, put on a clean shirt and went back to the dance. The elder Stewart testifies that he tried to restrain his son from returning to the dance, but the boy said the crowd that had beaten him were not going back there. Later the father said he got apprehensive and followed the boy over to the Muse house.

The testimony of the Stewart family about the boy getting a gun and his father taking it away from him is corroborated by the other boys participating in the crap game, they being still in the vicinity of the Stewart house at this time. There is a conflict in the proof as to whether young Stewart was beaten up as claimed.

When Fred Stewart got back to the Muse house he went in where they were dancing and, according to some of the State's witnesses, had an open knife in his hand. The deceased Ewin Smith seems not to have gone into the house when he returned to the Muse place but remained outside. Two of the State's witnesses say that while they were out in the yard with Ewin Smith taking a drink S. D. Stewart came up, put his arm around Smith, accused the latter together with his brother of beating up his (Stewart's) boy, and threatened to cut Smith's head off. These witnesses say that S. D. Stewart said that he came over to see that his boy and Smith fought it out fair.

According to the State's witnesses S. D. Stewart having charged that both the Smith boys jumped on the Stewart boy and Ewin Smith denying this, Fred Stewart was called out of the house onto the porch. The State's witnesses say that Ewin Smith approached young Stewart and asked if they (Smith and his brother) had "two-timed" him (Stewart), to which Stewart replied, "Hell, yes." These witnesses say that Fred Stewart immediately attacked Ewin Smith with a knife, that Ewin Smith retreated, undertaking to ward off the blows, that the boys stepped off of the porch, fell to the ground, that Ewin Smith got up and fell again. The testimony of the State's witnesses, some three or more, is that Ewin Smith acted on the defensive all the while, without any weapon, and that he was constantly retreating.

The State's witnesses further say that S. D. Stewart came up when this meeting of the boys took place on the porch, drew his knife and prevented any of the other boys from interfering in the struggle for the protection of Smith. One of the boys did undertake to interfere and was cut on the hand, probably by Fred Stewart.

After Ewin Smith fell the last time, he was picked up and carried to the front of the yard and died in a few minutes. He had received several knife wounds.

S. D. Stewart denies that he approached Ewin Smith in the yard and threatened to cut his head off. He testifies that he came over merely because he was apprehensive of further trouble between the boys and with the idea of keeping peace. His testimony and Fred Stewart's testimony is to the effect that when Fred Stewart came out on the porch, in response to a summons from somebody, Ewin Smith and his brother Eugene Smith both attacked the Stewart boy and that the Stewart boy acted altogether on the defensive.

The testimony of the Stewarts is to some extent corroborated by that of a boy named South, but South is in other respects discredited by a showing that his testimony on the preliminary trial was different, and in fact on the preliminary trial the testimony of South accorded with that of the State's witnesses on this hearing.

From the foregoing statement of the case it is obvious that the jury were warranted in concluding that young Stewart came over to the dance with the idea of renewing the trouble that arose out of the crap game and that he did renew it; that the father came over with the idea of aiding the boy and that he did aid him. We find no preponderance of evidence against the verdict of the jury.

It is assigned for error that the defendants were put to trial and that the trial proceeded to a verdict without any plea interposed by them, or any plea interposed in their behalf by the court, and that accordingly the verdict of the jury was a nullity. For this proposition we are referred to *Sams* v. *State,* 133 Tenn., 188, *Lynch* v. *State,* 99 Tenn., 124, and *Link* v. *State,* 50 Tenn. (3 Heisk.), 252. It is said in these cases that, in the absence of a plea by defendant, there is no issue for the jury to try and the verdict of the jury is a nullity.

In *Wallace* v. *State,* 72 Tenn. (4 Lea), 309, the jury was sworn to try the issues joined before the defendant had been formally arraigned and pleaded. Thereafter the defendant, on suggestion of the Attorney-General, was arraigned and pleaded not guilty. It was argued that at the time the jury were sworn there had been no issue formed, that there was nothing to try, and the swearing was a nullity. The court said:

"This view might be sustained, but it would be upon a very strict and literal construction of the law. In practice, a formal arraignment and plea is often dispensed with, and if a defendant should sit by and make no objection to the swearing of a jury to try him, upon the assumption that he had pleaded not guilty, it is doubtful if he should be heard to complain."

In *Muse* v. *State,* 106 Tenn., 181, the minute entry failed to show a plea but it showed that the jury were sworn to try the issues joined. It was held to be the necessary inference from the latter recital that a plea was interposed.

In the case before us the minute entry recites that the defendants were brought to the bar in proper persons, the bill of indictment read, and thereupon came a jury of good and lawful men "and the court assuming that the defendants had entered their plea of not guilty, and treating it as done swore the jury to well and truly try the issues joined."

It is to be inferred that affidavits were presented on the motion for a new trial tending to show that no plea was entered by the defendants in this case, although we do not find the affidavits in the record. The minute entry here recites that the court assumed the defendants had entered their plea and the trial thereupon proceeded. The case seems to fall directly within the suggestion of *Wallace* v. *State,* supra, where it was said that if a defendant sat by and made no objection and permitted the jury to be sworn upon the assumption that he had pleaded not guilty, it was to be doubted if he could thereafter complain.

Section 11737 of the Code provides, "If the defendant refuses or neglects to plead, or stands mute, the court

shall cause the plea of not guilty to be entered and proceed with the trial as if the defendant had put in the plea.''

Section 11803 of the Code provides, ''When a person, indicted or presented for a criminal offense, is arraigned before a court having jurisdiction of the matter, and pleads not guilty, and is tried upon the merits and convicted, he shall not be entitled to a new trial, or to an arrest of judgment, or to a reversal of the judgment, for any of the following causes: (1) Because the clerk of the court omitted to file or enter his plea of record. . . .''

There would seem to be little difference in the court causing a plea of not guilty to be entered and the court assuming that a plea of not guilty had been entered so long as this court may not reverse for the failure of the clerk to file or enter this plea. A contrary conclusion would be difficult to sustain, since a record of the plea is not necessary.

The exact question here came before the Supreme Court of the United States in *Garland* v. *Washington*, 232 U. S., 642, 58 L. Ed., 772, and that court, overruling an earlier case, said:

''Here the defendant could not have been injured by an inadvertence of that nature. He ought to be held to have waived that which, under the circumstances, would have been a wholly unimportant formality. A waiver ought to be conclusively implied where the parties had proceeded as if defendant had been duly arraigned, and a formal plea of not guilty had been interposed, and where there was no objection made on account of its absence until, as in this case, the record was brought to this court for review. It would be inconsistent with the

due administration of justice to permit a defendant under such circumstances to lie by, say nothing as to such an objection, and then for the first time urge it in this court.

"Holding this view, notwithstanding our reluctance to overrule former decisions of this court, we now are constrained to hold that the technical enforcement of formal rights in criminal procedure sustained in the Crain case is no longer required in the prosecution of offenses under present systems of law, and so far as pressed, it is necessarily overruled."

To the same effect is *Hack* v. *State,* 141 Wis., 346, 124 N. W., 492, 45 L. R. A. (N. S.), 664. See cases collected in Notes, 45 L. R. A. (N. S.), 664 and 13 L. R. A. (N. S.), 811.

The plaintiffs in error were tried below just as they would have been tried upon a formal plea of not guilty. Their rights were fully protected. Notwithstanding earlier decisions of this court, cited above, we could not, in view of the provisions of chapter 32 of the Acts of 1911 reverse the judgment below on the ground indicated. The error or irregularity complained of did not touch the merits of the case.

The judgment below is affirmed.