CALVIN EARL HILL, Plaintiff in Error, v. STATE
OF TENNESSEE, Defendant in Error—470 S.W.2d 853

June 16, 1971.

Certiorari Denied by Supreme Court September 7, 1971.

326

J. Fred Friedman, Memphis, for plaintiff in error.

David M. Pack, Attorney General, Robert H. Roberts, Assistant Attorney General, Nashville, Phil M. Canale, Jr., District Attorney General, Ewell C. Richardson and Harvey L. Herrin, Assistant District Attorney General, Memphis, for defendant in error.

MITCHELL, J.   Calvin Earl Hill, who will be referred to as the defendant or by name, was on November 18, 1969 indicted by the Grand Jury of Shelby County, Tennessee, jointly with Carl Preston Scruggs and Rufus D. Rhines on a charge of robbery by the use of a deadly weapon of James M. Williams of $276.00 in money of the United States on November 5, 1969.

On November 26, 1969 the trial court found the defendant was unable to employ counsel and appointed the Public Defender to represent him.

On February 24, 1970 the court allowed the Public Defender to withdraw as counsel and recorded Honorable J. Fred Friedman as counsel for the defendant.

On March 3 and 4, 1970 the defendant Calvin Earl Hill was tried in the Criminal Court of Shelby County which resulted in a conviction of robbery and the jury fixed the punishment at not more than six (6) years in the penitentiary upon which the trial Judge Honorable Odell Horton pronounced judgment.

After the motion for a new trial was heard and overruled the defendant appealed and assigned errors.

According to the testimony of the victim Jesse M. Williams age 23, he was on November 5, 1969 at his place of employment at the Minute Stop Grocery, 1620 Getwell, in Memphis. At about 7:00 P.M., he was alone and in charge of the store when the co-defendants, Carl Preston Scruggs and Rufus D. Rhines, armed with a pistol robbed him of $276.00 belonging to his employer the store owner. They required him to put the money in a paper bag and left the store carrying the money and three cans of beer for which they had not paid. Included in the money which the robbers took from Mr. Williams was a package of 25 one dollar bills bound with a money wrapper from the bank with the day manager's initials "A. C." on it.

The robbers as they left the store, got into a '62 or '63 model Buick 4 door car, white in color driven by the

defendant Calvin Earl Hill and drove away. The victim then notified the police and gave a description of the robbers and the car.

By excellent police work, in a matter of minutes the alert officers located the car and the robbers, arrested them and found in the car a .38 caliber revolver fully loaded and the stolen money, some of it in the car and some in the pockets of the defendants. The driver Calvin Hill denied any knowledge of the robbery and told the officers he had stopped the car at or near the grocery store to allow his co-defendants to get beer. That the money found in his pockets was from Workmen's Compensation checks he had cashed.

Prior to the trial of Calvin Earl Hill an agreement was reached between all of the defendants and the state that upon their plea of guilty the three of them would accept a sentence of ten years for armed robbery. After Scruggs and Rhines pleaded guilty and were sentenced, the defendant Hill, who had asked for a severance, withdrew his petition to be allowed to plead guilty and then entered a plea of not guilty.

According to the testimony of Lt. J. D. Moore, 16 years with the Memphis Police Department, he was in his police car on Lamar Avenue about 7:00 P.M., November 5, 1969, when he received a broadcast of a hold-up at 1620 S. Getwell. The broadcast gave a description of the robbers and the car in which they were traveling. He proceeded out Lamar to Getwell, he spotted the white Buick and three occupants. The car and two of the occupants fit the description he had been given. He followed them. The streets were well lighted and with his head

lights he could see that the clothing worn by two of the men was as had been described to him. He put on his blue light and stopped the Buick. He saw the man in the middle in the brown suit roll over like he was putting something under the seat. The man on the right did the same.

This officer asked the defendant Hill, who was driving the Buick car to come back to the police car which he did. He asked Hill if he knew the people in the car and he said he did not know them that he picked them up off the street. The three men in the Buick were placed under arrest. The officer could see some money sticking out between the lower portion of the seat and the hump over the transmission. It came to $70.00 and under the seat he found a .38 caliber revolver fully loaded. Money in the amount of $137.00 was taken from Scruggs, $25.00 out of his shirt pocket and $112.00 from his right jacket pocket. $41.00 was found in Hill's front pocket, and $70.00 taken from under the seat of the car where Mr. Rhines the middle man was sitting.

These men, after their arrest were warned of their rights. Rhines and Scruggs said they knew Mr. Hill, that they got in the car at Poplar and Fourth at Young's cafe.

The defendant Hill had $70.96 in his billfold when he was thoroughly searched at the Police Station.

Tommy Marvin Davis, who was employed by the Memphis Police Department at the police parking lot found a money wrapper under the floor mat in the defendant's car at the police parking lot. This paper wrap-

per is exhibit 3 to the State's proof, it had $25.00 written on it and the initials A. C.

When the State closed its case in chief the defendant Hill moved for a directed verdict of not guilty which was overruled.

The defendant, Calvin E. Hill testified in his own behalf that he had been living at Ridgely, Tennessee and that he was a heavy equipment operator. That he was not employed at the time of the arrest in this case. His last employment had been with the Hank Hammer Excavating Company, Topeka, Kansas and he was injured June 4 and presently drawing temporary compensation of $49.00 per week. That his checks were being sent to him at his sister's address in Memphis. He said he had been convicted of passing bad checks and forgery about 5 years ago. That he had come to Memphis to pick up his checks at his sister's house. That on November 5, 1969 he had visited the cafes and drank beer at the different places and he had a pint of whiskey. That he hadn't really been acquainted with Rufus D. Rhines but he had seen him around Young's cafe, but did not know his name. That he had never seen Carl Preston Scruggs prior to November 5, 1969. That he and Roy Tidwell were sitting at a booth in the cafe when Rhines and Scruggs got out of a taxi in front of the cafe and came in. That Rhines asked him if he would take them out on Lamar to get a tire. He took Rhines and Scruggs into his car. They directed him where to go. They turned left on Getwell when one or the other of them suggested they stop and get a beer. He stopped the car near Minute Stop Drive-In Grocery Store on Getwell Avenue. That he did

not know anything about a scheme or plan to commit robbery nor did he know that Scruggs had a pistol. That his car was about 20 or 30 feet from the door of the grocery store. Rhines and Scruggs got out and went in the store and he sat in the car. That he didn't pay any attention to how long they were gone. When they came back and got in the car they had 3 cans of Busch beer. He did not see anything else. They then started supposedly going to see about the tire and traveled about a mile and stopped. Rhines went up to the door of the place and came back and said there was no one home. That he became suspicious then, that perhaps they planned to rob him. He then drove back to the Minute Stop Grocery Store for the purpose of returning them to the place from which they had started. As they were driving along the street, the police car stopped them and they were placed under arrest. That he did not see the pistol or the money until the police found them in the car.

The defendant Hill testified on cross-examination over objection by his counsel that he did execute a written petition addressed to the court asking that he be allowed to waive a jury trial and plead guilty of armed robbery and accept a sentence of 10 years in the penitentiary. That he signed the petition and that it was signed by his lawyer and by the assistant District Attorney General. The defendant's petition for waiver of jury trial and plea of guilty and waiver of appeal contained averments that his attorney had advised him of the charges against him and possible defenses and of the punishment in the event the trial court accepted the plea of guilty. That this petition averred it was executed without any pressure from any source and that he was fully aware of the

action he was taking. On re-direct examination the defendant Hill explained that he executed this petition because his co-defendants Rhines and Scruggs pled guilty and had an agreement that their sentences would be 10 years in the penitentiary, and that they could not get that kind of disposition in their case unless the defendant Hill also pled guilty and accepted a sentence of 10 years. He testified further that Rhines and Scruggs threatened him with violence indicating that he would not live to serve the sentence or get out of the penitentiary unless he joined them in pleading guilty. The defendant Hill testified that he told the police officer that he was innocent, that he did not know anything about the robbery, that he did not see any of the money until the officers found it after the arrest. That the money he had on his person was the proceeds of his temporary compensation checks which he had received and cashed. The defendant Hill testified that he told the trial court he was not guilty and did not wish to plead guilty. That he requested a separate trial. He testified that in order for the other two men to plead guilty and receive a 10 year sentence it was also necessary for him to plead guilty.

Mrs. Maggie Floyd, sister of the defendant testified on his behalf and corroborated his testimony to the effect that his workman's compensation $49.00 checks were sent to him at her residence and that he picked them up from time to time. That on November 5, 1969 he picked up his checks, some times one and some times two.

Carl Preston Scruggs testified on behalf of the defendant Hill that he was jointly indicted with Hill in this case. That he has pleaded guilty and is under a ten year

sentence. That pressure was brought to bear on Hill to get him to sign a waiver and plead guilty. That they had an offer of 15 years and 10 years, and he suggested to Hill to go ahead and take 10 years in order for him and his co-defendant to get ten years. That there was a misunderstanding about that. He said, "we did make arrangements to get ten years and that's what the offer was, ten years for us so we made arrangements at the time to get the ten years if we could get him to plead guilty and sign a waiver for ten years," Scruggs said:

"And therefore, the State, in other words, we used him to get the ten years and then in return the state erred and made the mistake in sentencing us, the way it came about, they should have sentenced him first or they should have had all three of us to stand up and sentence us jointly, all three at one time so therefore, the, I pleaded guilty, the co-defendant, Rufus Rhines, pleaded guilty and then Hill seen a way out and so he refused, he refused to plead, to enter a plea. He had asked for severance and the severance was denied and so he seen he couldn't get a severance and I suggested to him right over there to take the ten years.

Q. Alright, now, Mr. Scruggs, I'll ask you, was ya'll's ten years conditioned or predicated upon his also pleading guilty.

A. Yes."

He testified that the defendant Hill had no knowledge of the robbery that occurred November 5, 1969 at the Minute Stop Grocery Store and did not participate in it in any way.

On cross-examination Scruggs admitted he had been convicted of arson in Mississippi in 1957 and sentenced to prison, convicted in 1960 of violation of the Dyer act and sentenced to the Federal Penitentiary, convicted in 1962 of violation of the interstate transportation of a motor vehicle and sentenced to Louisburg, Pennsylvania; convicted of burglary in 1964 in Mississippi sentenced to 27 months; convicted in 1966 in Memphis of violation of the bad check laws, convicted of Grand Larceny in Montgomery, Alabama, convicted in 1969 of receiving and aiding in concealing stolen property in Florida.

Rufus D. Rhines one of the co-defendants testified in behalf of the defendant that he had already been sentenced in the case. He admitted his participation in the robbery of James M. Williams at the Minute Stop Grocery on Getwell Avenue November 5, 1969. He said the defendant Hill did not know anything about the robbery nor have anything to do with it, that he did not see the money nor the pistol and did not share in the money taken in the robbery. He said he did not know the defendant Hill too well, that he saw him off and on within a period of three weeks. That he asked Hill to carry him to get a tire, that he had a flat and needed a tire. Hill agreed to do that. Carl Scruggs went with them. That they went to Minute Stop Grocery, 1620 Getwell and he (Rhines) and Scruggs went in to get the beer and defendant Hill stayed in the car. That the man had his cash register open and they walked through the store, got 3 cans of beer and he started to pay for the beer when Scruggs asked the clerk or manager if he had a sack and the man said yes, and started to hand the sack to him when Scruggs said, "no sack it up, we want it all."

Rhines testified Hill had no knowledge of their intention to rob the Minute Stop Grocery because they did not know it themselves. That after the robbery they did not tell Hill or advise him or split the money with him, that they did not know him well enough.

On cross-examination Rhines testified he was convicted of burglary in 1967 or 1968 and sentenced to the Penal Farm. That he did tell Hill he needed a tire for his car, that was not the truth. He did not need a tire and did not have a car there. That Scruggs had a car. That they went to get a tire but didn't get one, nobody was at home. That he went up and knocked on the door but no one answered, there was no car in the driveway.

That he suggested to Hill that he plead guilty, "I said that was the only way Carl (Scruggs) and I could get ten years. The State had offered us all ten years a piece and the only way Carl and I could get ten years even though the man was innocent he would have to take the ten years before we could get the ten years."

The District Attorney asked, "you suggested to an innocent man that he plead guilty and get ten years?" He answered, "well, let's put it like this, I asked him to and he was willing to go along with it."

Rhines further testified he did not in any way coerce or threaten or do any bodily harm or threaten any bodily harm to Mr. Hill to get him to plead guilty, neither did anybody to my knowledge threaten or coerce him. "I said that's the only way that we could get the ten years was him taking the ten and he said before I see you

boys get more than ten, said I'll take it even though I'm innocent, which he is innocent.''

The defense closed.

In rebuttal the District Attorney introduced Honorable Ronald Krelstein, Attorney-at-Law, of the Public Defender's staff, who testified that in his regular assigned duties he talked to the defendant Calvin Earl Hill, that he did not at anytime of his contacts with Mr. Hill make any promise or threats, or use any duress of any description with reference to his case. That his relations between him and the defendant were cordial.

On cross-examination he answered that in his counseling or conversations with the defendant he did make recommendations upon his observations of the facts and law in this matter in representing him as a Public Defender. Lieutenant Robert Miller of the Memphis Police Department was introduced as a rebuttal witness by the State and testified that after the arrest of the defendants in this case he talked to the defendant Hill along with the other two defendants. That the defendant was advised of his rights and the defendant stated that after the robbery they just drove around until they were arrested.

In his brief the defendant has assigned as errors I and II that the court erred in overruling the defendant's motion for a directed verdict of not guilty at the close of the State's proof and again at the close of all the proof. These two assignments will be considered together.

At the close of the State's proof the question of whether to direct a verdict of not guilty was in the sound

discretion of the trial judge and we find no abuse of his discretion in refusing to direct a verdict for the defendant.

Whether to direct a verdict for the defendant at the close of all the proof is controlled by T.C.A. sec. 40-2529 and by the rule laid down in Ridley v. Spence, 61 Tenn. App. 571, 456 S.W.2d 846, 848 (1970).

T.C.A. sec. 40-2529 is as follows:

"In a criminal prosecution the trial judge shall direct the jury to acquit the defendant if at the close of the evidence for the prosecution, or at the close of all the evidence, the court is of the opinion that the evidence is insufficient to warrant a conviction."

In Ridley v. Spence, *supra*, the court said:

"As has been held in numerous cases in this State the rule for determining a motion for a directed verdict requires the trial Judge and the reviewing Court on appeal to look at all of the evidence, to take the strongest legitimate view of it in favor of the opponent of the motion, and to allow all reasonable inferences from it in his favor; to discard all countervailing evidence, and if then, there is any dispute as to any material determinative evidence, or any doubt as to the conclusion to be drawn from the whole evidence, the motion must be denied." 456 S.W.2d at 848.

While Ridley v. Spence is a civil case, we think the same general principles apply to motions for directed verdicts in criminal cases.

Assignments of error I and II are overruled.

■ By assignment III the defendant complains that the court erred in allowing the District Attorney on cross examination of the defendant to introduce in evidence Trial Exhibit no. 11, styled petition for waiver of trial by jury and request for acceptance of a plea of guilty.

We are of the opinion that the introduction in evidence of the petition of the defendant requesting the court to allow him to plead guilty had the same effect as if it had been a plea of guilty and that the question of its admissibility is governed by the same rules of law, and that reversible error was committed.

Our Supreme Court held in Brooks v. State, 187 Tenn. 67, 213 S.W.2d 7 that:

"Here the record shows the parties went to trial on a plea of Not Guilty and the verdict was returned after considering the evidence on this plea. The first and only intimation of a previous plea of guilty comes through a question to the defendant on cross examination. Under these circumstances it seems clear to us that the State, having thus proceeded, waived the former plea of guilty and any formal order setting the same aside and elected to try the defendant on his plea of Not Guilty. The converse of this proposition was held in Stewart v. State, 164 Tenn. 202, 46 S.W.2d 811. A fortiori the rule should apply to a defendant."

"Having thus proceeded, it was erroneous for the State to ask the defendant on cross examination 'if he did not plead guilty to the charge.' In Kercheval v.

United States, 274 U.S. 220, 47 S.Ct. 582, 583, 71 L.Ed. 1009, Mr. Justice Butler speaking for the Court said:

" 'A plea of guilty differs in purpose and effect from a mere admission or an extra-judicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence. Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences. When one so pleads he may be held bound. (Citing authority.) But, on timely application, the court will vacate a plea of guilty shown to have been unfairly obtained or given through ignorance, fear or inadvertence. Such an application does not involve any question of guilt or innocence. (Citing authority.) The court in exercise of its discretion will permit one accused to substitute a plea of not guilty and have a trial if for any reason the granting of the privilege seems fair and just. (Citing authority.)' "

" 'The effect of the court's order permitting the withdrawal was to adjudge that the plea of guilty be held for naught. Its subsequent use as evidence against petitioner was in direct conflict with that determination. When the plea was annulled it ceased to be evidence. By permitting it to be given weight the court reinstated it pro tanto. (Citing authority). The conflict was not avoided by the court's charge. Giving to the withdrawn plea any weight is in principle quite as inconsistent with the prior order as it would be to hold the plea conclusive. Under the charge, if the plea was

found not improperly obtained, the jury was required to give its weight unless petitioner was shown to be innocent. And, if admissible at all, such plea, inevitably must be so considered. As a practical matter, it could not be received as evidence without putting petitioner in a dilemma utterly inconsistent with the determination of the court awarding him a trial. Its introduction may have turned the scale against him. ''The withdrawal of a plea of guilty is a poor privilege, if, notwithstanding its withdrawal, it may be used in evidence under the plea of not guilty.'' ' ''

Again in Dykes v. State, 213 Tenn. 40, 372 S.W.2d 184 where the technical record showed the case was continued till the next term on agreement to plead guilty, our Supreme Court said:

''The opinion of this Court in Brooks v. State, supra, which was written by the present Chief Justice, clearly aligns Tennessee with those jurisdictions which hold that a withdrawn plea of guilty entered in the trial court may not be shown in evidence as a judicial confession at the trial of the indictment. In the Brooks case the Court quoted with approval excerpts from Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009, which is the leading case holding evidence of a withdrawn guilty plea is not admissible against the defendant.''

''In Basic Problems of Evidence by Morgan, at Page 286, it is stated that the trend seems to be to exclude such evidence. The cases dealing with the admissibility in evidence of a withdrawn plea of guilty are collected in an annotation in 86 A.L.R.2d 326. Here though, we

do not have a withdrawn guilty plea, but an offer or agreement to plead guilty upon a continuance to the next term followed by a trial upon a not guilty plea."

"Minnesota is among the states holding that evidence of such withdrawn plea may not be introduced upon the trial. The Supreme Court of that state, when presented with the question of whether or not evidence of an offer to plead guilty could be admitted in State v. McGunn, 208 Minn. 349, 294 N.W. 208, 209, stated:

' "It is not a former plea of guilty with which we have to deal in the case at bar, but merely a proposal to plead guilty on the promise of recommendation of a suspended sentence. Can it be said that the above reasoning does not apply with equal force to the case where the defendant merely makes an offer to plead guilty, as to the case where the defendant actually make such a plea and later, by leave of court, withdraws it? We think not. If such were the result, the defendant who merely offered to plead guilty would be in a worse plight than the defendant who actually pleaded guilty, withdrew his plea and substituted another." '

"In passing upon the admissibility in evidence of an agreement to enter a guilty plea made at a prior term of Court, the Texas Court of Criminal Appeals, in Dean v. State, 72 Tex.Cr.R. 274, 161 S.W. 974, held:

' "While it is true, if an agreement had been entered into it ought to have been lived up to, yet if the appellant did not desire to enter a plea of guilty, as her counsel agreed she would do, it was her right not

to do so, and let the state prove her guilt if it could do so, and the court correctly held that this agreement of counsel was not admissible in evidence." '

"We agree with the conclusions reached by the Courts in the cases quoted from above. Just as the State waived the former plea of guilty in the Brooks case by going to trial on a plea of not guilty, so the State in the case at bar waived the agreement to plead guilty by proceeding to trial on the plea of not guilty."

We hold that it was error for the court to admit in evidence the defendant's petition to be allowed to plead guilty, accordingly, we sustain assignment of error number III.

■ The final assignment IV is to the effect that the defendant was prejudiced by the introduction of Mr. Krelstein of the Public Defender's staff who had represented Rhines and Scruggs and the defendant when he agreed to enter a plea of guilty. The defendant had introduced proof that he was being pressured and threatened by his co-defendants to plead guilty in order that they could get the minimum sentence and that the Public Defender was aware of it. The defendant testified, "they sent them Public Defender's up there trying to get me to cop out", and that Mr. Krelstein was one of them. The State introduced Mr. Krelstein to rebut this fact. We hold that this was legitimate rebuttal and that the trial judge properly admitted this evidence and overrule assignment number IV.

We express our thanks to court-appointed counsel for faithful and effective service rendered on behalf of the defendant.

For the reasons set forth in this opinion the judgment is reversed and the case remanded for a new trial.

Walker, P.J., and Oliver, J., concur.