IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 7, 2006

## STATE OF TENNESSEE v. JERRY PHILLIP HALEY

**Direct Appeal from the Circuit Court for Henry County**
**Nos. 13732, 13733    Julian P. Guinn, Judge**

———————————

**No. W2005-01447-CCA-R3-CD  - Filed May 4, 2006**

———————————

The defendant, Jerry Phillip Haley, was convicted of aggravated burglary, theft over $1000, and assault. The trial court imposed Range II sentences of six years for the aggravated burglary, four years for the theft, and eleven months and twenty-nine days for the assault. The sentences were ordered to be served concurrently, for an effective sentence of six years. In this appeal, the defendant asserts (1) that the trial court erred by denying his motion for judgment of acquittal based on the insufficiency of the evidence and (2) that the trial court erred by failing to provide a jury instruction on facilitation of a felony. The judgments of the trial court are affirmed.

**Tenn. R. App. P. 3; Judgments of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOSEPH M. TIPTON and NORMA MCGEE OGLE, JJ., joined.

W. Jeffrey Fagan, Assistant Public Defender, for the appellant, Jerry Phillip Haley.

Paul G. Summers, Attorney General & Reporter; J. Ross Dyer, Assistant Attorney General; Robert "Gus" Radford, District Attorney General; and Steve Garrett, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On September 22, 2004, Detective William Gary Vandiver of the Henry County Sheriff's Department investigated a theft that had taken place three days earlier at the residence of Robert and Linda Kilpatrick. During the interview of the Kilpatricks and their two adult sons, Clint and Walt, the detective learned that a PlayStation game console, PlayStation games, and some jewelry had been taken from the residence. Detective Vandiver also learned that Clint and Walt Kilpatrick had gone to Lisa Wilson's residence two days earlier, in an attempt to recover the stolen property. Clint Kilpatrick claimed that the defendant had assaulted him while he was there. After the interviews, Detective Vandiver questioned the defendant and Jamie Clayton at the Wilson residence and at the

conclusion of the interrogation, placed each of them under arrest. Some of the property, valued at $500, was recovered but none of Ms. Kilpatrick's jewelry was ever found.

After receiving information from Detective Vandiver, Detective Thomas Lankford of the Paris Police Department investigated a burglary that had taken place at the residence of Jennifer Clayton[1] in Paris. He then questioned Jamie Clayton and charged her and the defendant with burglary. Items taken during the burglary included a laptop computer, a PowerPoint projection system, a modem, an iron, synthetic diamond earrings, and loose change. According to Detective Lankford, Jamie Clayton admitted that she and the defendant had taken the change to a Coinstar machine at a local Kroger. She provided him with a receipt from the transaction.

Linda Kilpatrick testified that her sons, Clint and Walt, had developmental delays but, as a part of their training at an adult learning center, were able to work as janitors at a local hospital. She remembered that when Walt returned home from work in the late evening of September 19, 2004, he noticed that his PlayStation and several games were missing. Ms. Kilpatrick stated that they did not report the missing items immediately because she first wanted to determine whether her son had loaned them to a friend, as he had done in the past. She explained that after learning on the following day that the game had not been loaned by Walt, she sought information from Clint about the missing game. According to Ms. Kilpatrick, she confirmed that the game had been stolen and then discovered that all of her jewelry, including two necklaces and several rings, was missing. She valued the stolen property taken at more than $10,000.

Ms. Kilpatrick testified that although she had never personally met the defendant, she had spoken to him by telephone and believed that he had visited her residence at times when she was not present. She also testified that during the short period of time that Clint dated Jamie Clayton and was friends with the defendant, he experimented with illegal drugs and expended a savings account of $1800. According to Ms. Kilpatrick, she had "grounded" Clint shortly before the theft and forbade him from having any contact with either the defendant or Jamie Clayton. She confirmed that when the theft took place, neither the defendant nor Jamie Clayton had permission to be at her residence or consent to take any property from it.

Clint Kilpatrick, who was at home alone on the date of the theft, testified that when the defendant and Jamie Clayton telephoned to ask permission to visit, he explained that his parents did not usually allow visitors. He claimed that the two came anyway, arriving shortly after 2:00 p.m. It was his testimony that they asked him to "show them a little bit of the house" and that he complied before walking outside with them. He stated that while he was outside, "Jamie started distracting [him] while [the defendant] went back in the house" and that a short time later, the defendant walked out onto the porch and informed Jamie that "they had somewhere to be real quick." Clint maintained that he saw the defendant walk outside with the PlayStation but was too scared to say anything to him. He stated that he did not initially tell his parents what had happened because he did not want to get in trouble. It was his recollection that he told his parents what had happened on the following

---

[1]It does not appear from the record that the two Clayton women are related.

-2-

day. He recalled that he and his brother, Walt, went the next day to Lisa Wilson's residence to try and recover the property from the defendant. Clint testified that when he asked the defendant about the PlayStation, the defendant "started cussing and saying he didn't have it." He contended that the defendant then "pushed against [his] head twice and then hit [him] actually once." During cross-examination, Clint acknowledged that Jamie Clayton had made the telephone call and had asked for permission to come to visit and, later, for a tour of his house. He conceded that the defendant had not been to his residence at any time before the theft.

Jennifer Clayton, who lived on Blithe Street in Paris, testified that on September 20, 2004, she saw the defendant walking near the side of her residence as she left to go to dinner with friends. According to Ms. Clayton, the defendant made rude comments to her and was "walking very slowly eyeing [her] the whole time." She testified that she stayed overnight with a friend and when she returned to her residence on the following morning, she noticed that her entire computer system was missing, papers had been scattered around her office, and her projector system, a pair of synthetic diamond earrings, and some loose change had been taken from her residence. According to Ms. Clayton, she "saw exactly where [the perpetrator] came in, which was . . . through [her] bedroom window," which had been left slightly open that evening. She valued the property taken at approximately $5000.

Jamie Clayton, who was a witness for the state, testified that she had known the defendant for approximately five years and claimed that the two had been smoking crack cocaine together for three years. She denied having a romantic relationship with the defendant, describing their relationship as "drug buddies." She admitted having taken advantage of Clint after meeting him through a friend and using his money to buy drugs. She recalled that on the day of the Kilpatrick theft, she and the defendant had been "up for a couple of days and then . . . ran out of dope," after which she telephoned Clint, who told her that "he didn't think it was a good idea" for her to come to his home. She testified that she and the defendant decided to go regardless and that on the way, the defendant remarked that he was "going to find some way to get high."

Jamie Clayton testified that when she and the defendant arrived at the Kilpatrick residence, Clint let them inside and gave them a tour of the house, after which she joined him on the back porch. She explained that they were on the porch for approximately twenty minutes while the defendant was in the house alone. She stated that when the defendant returned, he announced, "I'm late, I'm late, let's go." According to Jamie Clayton, the defendant later stated to her, "I'm a real thug now," and showed her "a lot" of jewelry and the PlayStation console in the back seat. She testified that they drove into Paris and "got rid of" the PlayStation at the residence of the mother of the defendant's baby. While admitting that she did not see the transaction, she claimed that the defendant "got rid of all the jewelry at Washington Court for some dope." She explained that she saw the defendant enter an apartment with the jewelry and return with cocaine. She recalled that after leaving the apartment complex, they returned to Lisa Wilson's residence and smoked the cocaine.

Jamie Clayton testified that on the following day, she and Lisa Wilson found a note from the defendant which stated that he had gone to a friend's house to use the phone. She recalled that when he returned, he was carrying a white bag which contained "a projector, a thing of coins, . . . modem and . . . a laptop." According to Jamie Clayton, the defendant claimed that he got the property from a house on Blithe Street. She confirmed that the three of them went to a nearby Kroger to exchange the loose change for bills in the Coinstar machine and then took the electronics to Depot Hill "to exchange it for dope."

Jamie Clayton testified that after her arrest for theft, the defendant sent a letter to her at the jail. In the letter, which was admitted into evidence, the defendant asked her to "change [her] whole story up" and say that he was not involved. In exchange, he promised her that he would post bail and help her get probation. Jamie Clayton contended that the defendant tried to communicate with her several times during her incarceration.

During cross-examination, Jamie Clayton conceded that she did not actually see the defendant take property from either the Kilpatrick residence or Jennifer Clayton's residence. She insisted, however, that she did not take the property and did not ask the defendant to take the property. While acknowledging that she had gone with the defendant to the Kilpatrick residence to get money, she claimed that it was her intention to get the money from Clint rather than committing a theft.

Lisa Wilson testified that "sometime after" September 20, 2004, Clint and Walt Kilpatrick came to her residence to speak with the defendant. She recalled that when Clint asked the defendant "about taking stuff . . . [the defendant] got mad and slapped [Clint]." She contended that the defendant struck Clint in the face one time. According to Ms. Wilson, the defendant admitted burglarizing Jennifer Clayton's residence, saying that he "had broken through the window and he knew that nobody was there. He saw the woman and that she left. . . . He went in the window and went out the front door." She stated that she saw a laptop computer, a projector, and the loose change that the defendant claimed to have taken from the residence. She confirmed the testimony that the defendant sold the electronic items and took the change to a Kroger store to exchange it for bills.

Erika Lynn Clark, who is the mother of the defendant's daughter, was a defense witness. She claimed that when the defendant arrived at her residence, he told her that Jamie Clayton wanted to sell her a PlayStation. She contended that she walked out to the car and that Jamie Clayton quoted her a price of $50. According to Ms. Clark, both Jamie Clayton and the defendant told her that the PlayStation belonged to Jamie Clayton. She stated that she paid the defendant $50 for the game.

James Steven Lane, another defense witness, testified that Ms. Wilson made a statement implicating Jamie Clayton in the burglary. He claimed that Ms. Wilson never suggested that the defendant was a participant in the offense.

Andre Perkins, a third defense witness, testified that in September of 2004, he saw two women attempting to sell a computer and other electronic equipment out of the back of a car. He did not identify the women.

I

The defendant first asserts that the trial court erred by refusing to grant a motion for judgment of acquittal based on the insufficiency of the evidence. He asserts that the primary witnesses for the state, Clint Kilpatrick and Jamie Clayton, were not credible. The state submits that the evidence was sufficient.

> Rule 29 of the Tennessee Rules of Criminal Procedure provides, in relevant part, as follows: The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

Tenn. R. Crim. P. 29(a).

This rule empowers the trial judge to direct a judgment of acquittal when the evidence is insufficient to warrant a conviction either at the time the state rests or at the conclusion of all the evidence. Overturf v. State, 571 S.W.2d 837, 839 (Tenn. 1978). At the point the motion is made, the trial court must favor the opponent of the motion with the strongest legitimate view of the evidence, including all reasonable inferences, and discard any countervailing evidence. Hill v. State, 470 S.W.2d 853, 858 (Tenn. Crim. App. 1971). The standard by which the trial court determines a motion for judgment of acquittal at that time is, in essence, the same standard which applies on appeal in determining the sufficiency of the evidence after a conviction. State v. Ball, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998); State v. Anderson, 880 S.W.2d 720, 726 (Tenn. Crim. App. 1994). That is, "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see Tenn. R. App. P. 13(e).

When considering a sufficiency question on appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

With regard to the theft charge, the evidence at trial established that Jamie Clayton telephoned Clint Kilpatrick seeking permission for her and the defendant to come to his residence. There was proof that the defendant was inside alone for several minutes and that when he finally came outside, he was in a rush to leave. Clint Kilpatrick saw the defendant carry the PlayStation out of the residence. Jamie Clayton heard the defendant describe himself as "a real thug" as he showed her some jewelry. A PlayStation was in the backseat. Linda Kilpatrick confirmed that a PlayStation game console, PlayStation games, and jewelry, valued at several thousand dollars, were taken from her residence.

As to the burglary, Jennifer Clayton testified that as she was leaving her residence on Blithe Street, she noticed the defendant walking very slowly nearby. She recalled that when she returned to her residence the following morning, her computer, projection system, iron, and some loose change were missing. Jamie Clayton and Lisa Wilson confirmed that the defendant was later in possession of a white bag containing those same items. Ms. Wilson overheard the defendant admit to taking the property from a residence on Blithe Street.

As to the assault charge, Clint Kilpatrick testified that when he went to Ms. Wilson's residence to recover his property from the defendant, the defendant cursed at him and struck him in the face. Ms. Wilson confirmed that testimony. While the defendant contends that Clint Kilpatrick and Jamie Clayton were not credible, the law provides that the assessment of the credibility of witnesses is within the province of the jury. Byrge, 575 S.W.2d at 295. Under these circumstances, it is our view that the evidence was sufficient to support the convictions.

II

The defendant also contends that the trial court erred by failing to instruct the jury on facilitation of a felony as a lesser included offense of each of the charged offenses. The state submits that the only offense that involved an actor other than the defendant was the theft of property from the Kilpatrick residence and that the evidence of that offense did not warrant a facilitation instruction.

Under the United States and Tennessee Constitutions, a defendant has a constitutional right to trial by jury. U.S. Const. amend VI; Tenn. Const. art. 1, § 6; see State v. Bobo, 814 S.W.2d 353, 356 (Tenn. 1991); see also Willard v. State, 130 S.W.2d 99 (1939). This right encompasses the defendant's right to a correct and complete charge of the law. State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). In consequence, the trial court has a duty "to give a complete charge of the law applicable to the facts of a case." State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986); see State v. Forbes, 918 S.W.2d 431, 447 (Tenn. 1990); see also Tenn. R. Crim. P. 30.

Whether a given offense should be submitted to the jury as a lesser included offense is a mixed question of law and fact. State v. Rush, 50 S.W.3d 424, 427 (Tenn. 2001) (citing State v. Smiley, 38 S.W.3d 521 (Tenn. 2001)). The standard of review for mixed questions of law and fact is de novo with no presumption of correctness. Id.; see also State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). The trial court has a duty "to give a complete charge of the law applicable to the facts of a case." State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986); see also Tenn. R. Crim. P. 30.

The trial court has a duty to instruct the jury as to a lesser included offense if reasonable minds could accept the offense as lesser included and the evidence is legally sufficient to support a conviction for the lesser included offense. Burns, 6 S.W.3d at 469; see also State v. Langford, 994 S.W.2d 126, 128 (Tenn. 1999). Moreover, our supreme court has held that trial courts "must provide an instruction on a lesser-included offense supported by the evidence even if such instruction is not consistent with the theory of the State or of the defense. The evidence, not the parties, controls whether an instruction is required." State v. Allen, 69 S.W.3d 181, 188 (Tenn. 2002). Our high court observed that the "jury is not required to believe any evidence offered by the State," and held that the authority of the jury to convict on a lesser included offense may not be taken away, even when proof supporting the element distinguishing the greater offense from the lesser offense is uncontroverted. Id. at 189.

Facilitation is a lesser included offense under part (c) of the Burns test. See Burns, 6 S.W.3d at 466-67. "A person is criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a) (2003). A person is criminally responsible for the conduct of another under section 39-11-402(2) if, "acting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-403(a) (2003). Thus, in order for the jury to have found the defendant guilty of facilitation, it would have had to conclude that the defendant provided Jamie Clayton with substantial assistance in the commission of the offenses but that he did not have the intent to benefit in the results.

As pointed out by the state, the proof at trial established that the only offense that involved an actor other than the defendant was the theft of property from the Kilpatrick residence. As to that offense, Clint Kilpatrick testified that Jamie Clayton telephoned him and asked if she and the defendant could visit his residence. Once there, they asked for and were given a tour of the residence. Afterward, the defendant was in the residence alone. Meanwhile, Clint Kilpatrick and Jamie Clayton talked on the back porch. As the defendant left the residence, he was carrying the PlayStation. Jamie Clayton confirmed that the defendant showed her a PlayStation and some jewelry as they drove away from the Kilpatrick residence. While there was an indication that Jamie Clayton may have helped to distract Clint Kilpatrick during the time that the defendant was inside the residence, there was otherwise no indication that she was a participant in the theft. There was certainly no proof that Jamie Clayton had masterminded the offense or that the defendant had merely provided her with "substantial assistance." The defendant took the property from the residence. Under these circumstances, it is our view that the trial court did not err by refusing to provide an instruction on facilitation of theft as a lesser included offense of theft. See State v. Rice, 184 S.W.3d 646 (Tenn. 2006) (holding that the trial court did not err by refusing to instruct on facilitation where the defendant's actions did not qualify as those of a facilitator).

Accordingly, the judgments of the trial court are affirmed.

_____
GARY R. WADE, PRESIDING JUDGE