IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 10, 2006

## STATE OF TENNESSEE v. JAMES E. FENTON, JR. A/K/A CHRIS FENTON

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2004-B-1241     Steve Dozier, Judge**

**No. M2005-01761-CCA-R3-CD - Filed July 7, 2006**

The defendant, James Fenton, was convicted of especially aggravated robbery. The trial court imposed a sentence of twenty years. In this appeal, the defendant asserts (1) that the trial court erred by disallowing questions about the number of times the victim had previously been robbed; (2) that the evidence was insufficient to support the conviction; (3) that the trial court erred by denying his motion for judgment of acquittal; (4) that the trial court failed to appropriately exercise its role as thirteenth juror; and (5) that the trial court erred by failing to consider as a mitigating factor the defendant's lack of education. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

Danny J. Baxter, Nashville, Tennessee, for the appellant, James E. Fenton, Jr.

Paul G. Summers, Attorney General & Reporter; Blind Akrawi, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Pamela Anderson and Rachel Sobrero, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

On January 7, 2004, the victim, Lindell Graves, was preparing to leave his apartment when two men, one armed with a handgun, entered the residence, beat him, and took his money and jewelry. At trial, the victim testified that he heard a knock at the door, looked through the peephole, and saw two men standing in the hallway. The face of one of the men was obstructed by a box and the other man was wearing "clear frame glasses with little gold things on them and . . . a light brown scarf around his neck that came to [the very bottom of his chin]." As the victim opened the door, the two men "rushed . . . through the door," knocking him "through the wall." The victim recognized the man wearing the glasses and scarf as the defendant, with whom he had been acquainted for some

time. He did not recognize the other man, who had "brown hair and a little moustache." The defendant struck the victim in the head with a nine millimeter handgun, threatened to kill him, and demanded his money. The other man searched his bedroom, tossing the furniture as he did so. When the victim claimed that he had no money, the defendant hit him in the mouth with the gun, breaking his jaw and shattering his teeth. The two men robbed the victim of his coat, a gold chain, rings, a watch, and the cash from his pocket. During the attack, the defendant remarked that the victim's brother, Josh, had informed him that the victim had recently received a large income tax refund.

As he left the residence, the defendant grabbed the victim's cell phone and ordered him to lie on the floor for ten minutes. After a short time, the victim crawled to an upstairs apartment, where a neighbor called 911. As a result of the beating, the victim suffered continuous headaches and could not eat solid food for several months. At the time of the trial, he faced additional surgery and further treatment expected to cost upwards of $10,000. A few days after the robbery, the victim telephoned the defendant, who denied participation in the robbery but said, "I kept the dude from beating your ass." Several weeks after the offense, the victim identified the defendant from a photographic lineup.

The victim admitted that he did not immediately identify the defendant as one of the assailants, explaining that he was "dazed and confused" as a result of his injuries. While acknowledging that "Joshua" was listed in the police report as "suspect number one," the victim denied telling police that anyone by that name had committed the robbery. The victim explained that during his initial interview with police, he made reference to his brother, Josh, because the defendant had mentioned his name as his source of knowledge about the tax refund.

The victim's fiancee, Audrey Duke, was at work on the night of the offense when she was notified that he had been hospitalized. When she arrived at the hospital, she observed that the victim's "mouth was all busted up. He had a big patch of hair out. He was just bleeding all over. His . . . lips were busted. All [of his teeth had been] knocked out." A few days after the robbery, as Ms. Duke dropped off the victim's son at school, the defendant approached her and said that he "had a beef with" the victim and "was going to get him." When she returned to her residence, she asked the victim to telephone the defendant and then overheard the defendant claim that he had "stopped the dude from beating him." At that point, she took the phone and told the defendant that she had recorded the statement. According to Ms. Duke, the defendant responded, "[S]ee, I warned you. Now you're going to get hurt."

Officer Troy Gossett of the Metro Police Department responded to the robbery call and took the initial statement from the victim. Officer Gossett testified that there was "a misunderstanding" and that he inadvertently placed the victim's brother's name in the suspect box on his report. He explained that he cleared up the error in the narrative portion of his report. He testified that the victim listed the items taken as a "wallet with miscellaneous identifications and five hundred dollars in cash, a gold nugget watch, an eighteen-inch fourteen carat gold rope chain with a half carat diamond pendant, a nugget ring, a cross ring with diamonds on it, a cell phone, and a set of keys."

Detective Chad Gish, who received the initial report from Officer Gossett, did not conduct any follow-up investigation until two days later. He recalled that he asked the victim to come to the police station to give a statement but the victim, because of his injuries, was not able to do so until three weeks after the offense. During the initial conversation, the victim reported to the officer that the defendant had committed the robbery. Later, he identified the defendant from a photographic lineup.

I

The defendant first asserts that the trial court erred by refusing to allow him to question the victim about the number of times the victim had been robbed. He claims that this evidence was relevant to the issue of the victim's credibility. The state submits that the trial court properly excluded the evidence as irrelevant.

Relevant evidence is that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable" than it otherwise would be. Tenn. R. Evid. 401. Generally, all relevant evidence is admissible. Tenn. R. Evid. 402. At the discretion of the trial court, however, relevant evidence may be excluded if it presents a danger of unfair prejudice:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Tenn. R. Evid. 403. This court will not reverse the trial court absent an abuse of discretion. See State v. Stout, 46 S.W.3d 689, 700 (Tenn. 2001).

During cross-examination of the victim, defense counsel asked, "How many times have you been robbed in the past?" At that point, the state objected, arguing that the number of times the victim had been robbed was not relevant. During a conference outside the hearing of the jury, defense counsel contended that the evidence was relevant because the victim had been robbed on two prior occasions, suggesting that several other people may have been angry with him. In this appeal, the defendant contends that the evidence was relevant because it was necessary to assess the credibility of the victim.

Initially, a defendant may not assert one ground for relief in the trial court and then pursue a new or different theory on appeal. See State v. Adkisson, 899 S.W.2d 626, 634-35 (Tenn. Crim. App. 1994). Further, the defendant has failed to establish how the victim's credibility might have been affected by the fact that he had been robbed on prior occasions. There was no offer of proof. From that perspective, the defendant has waived this issue. See Tenn. R. Evid. 103(a); Alley v. State, 882 S.W.2d 810, 815 (Tenn. Crim. App. 1994). Moreover, the defendant is not entitled to relief on the merits. That the victim had previously been the victim of a crime does not, in our view, "make the existence of any fact that is of consequence to the determination of the action more

-3-

probable or less probable." See State v. Willis, 735 S.W.2d 818, 822 (Tenn. Crim. App. 1987) (holding that in the absence of proof that the victim falsified a previous allegation, the fact that the victim accused another person of committing a separate offense against her was immaterial).

## II

The defendant next asserts that the trial court erred by denying his motion for judgment of acquittal and claims that the evidence was insufficient to support the conviction. In a related issue, he contends that the trial court erred by failing to properly exercise its role as thirteenth juror.

> Rule 29 of the Tennessee Rules of Criminal Procedure provides, in relevant part, as follows: The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

Tenn. R. Crim. P. 29(a).

This rule empowers the trial judge to direct a judgment of acquittal when the evidence is insufficient to warrant a conviction either at the time the state rests or at the conclusion of all the evidence. See generally Overturf v. State, 571 S.W.2d 837 (Tenn. 1978). At the point the motion is made, the trial court must favor the opponent of the motion with the strongest legitimate view of the evidence, including all reasonable inferences, and discard any countervailing evidence. Hill v. State, 470 S.W.2d 853, 858 (Tenn. Crim. App. 1971). The standard by which the trial court determines a motion for judgment of acquittal at that time is, in essence, the same standard which applies on appeal in determining the sufficiency of the evidence after a conviction. State v. Ball, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998); State v. Anderson, 880 S.W.2d 720, 726 (Tenn. Crim. App. 1994). That is, "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see Tenn. R. App. P. 13(e).

When considering a sufficiency question on appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

Here, the victim testified that the defendant was one of the men who forcefully entered his residence. He recognized the defendant, who "smashed" his head with a nine millimeter handgun, demanded money, and threatened his life. The defendant struck the victim a second time with the gun, breaking his jaw and shattering his teeth. According to the victim, the two men took money, jewelry, a cell phone, keys, and a jacket from the victim. While there was evidence that the victim failed to initially identify the defendant as the perpetrator, he explained that he was "dazed and confused" as a result of his injuries. Only two days later, the victim named the defendant as one of his assailants and, three weeks after that, identified the defendant in a photographic lineup. The jury accredited the testimony of the state's witnesses, as was its prerogative. See State v. Summerall, 926 S.W.2d 272, 275 (Tenn. Crim. App. 1995). Under these circumstances, it is our view that the evidence was sufficient to support the convictions.

As indicated, the defendant also asserts that the trial court did not properly exercise its function as thirteenth juror. Rule 33 of the Tennessee Rules of Criminal Procedure provides that a "trial court may grant a new trial following a verdict of guilty if it disagrees with the jury about the weight of the evidence." Tenn. R. Crim. P. 33(f). The purpose of the thirteenth juror rule is to be a "'safeguard . . . against a miscarriage of justice by the jury.'" State v. Moats, 906 S.W.2d 431, 434 (Tenn. 1995) (quoting State v. Johnson, 692 S.W.2d 412, 415 (Tenn. 1985)). The rule requires that the trial judge must be personally satisfied with the verdict. State v. Dankworth, 919 S.W.2d 52, 56 (Tenn. Crim. App. 1995).

In State v. Carter, 896 S.W.2d 119, 122 (Tenn. 1995), our supreme court acknowledged the restoration of the thirteenth juror rule as it existed at common law, thereby mandating that trial judges exercise the duty to function as a thirteenth juror in criminal cases. An order overruling a motion for new trial establishes a presumption that the trial court has exercised the duty and no explicit statement on the record is required. Carter, 896 S.W.2d at 122; see also State v. Robert Bacon, No. 03C01-9608-CR-00308, slip op. at 18-19 (Tenn. Crim. App., at Knoxville, Jan. 8, 1998). It is only when the trial court expresses dissatisfaction or disagreement with the jury verdict or makes statements indicating that it has absolved itself of its responsibility that the judgment should be set aside. Bacon, slip op. at 19.

"When [a] trial judge simply overrules a motion for new trial, an appellate court may presume that the trial judge has served as the thirteenth juror and approved the jury's verdict." Carter, 896 S.W.2d at 122. "[T]he accuracy of a trial court's thirteenth juror determination is not a subject of appellate review." Moats, 906 S.W.2d at 435; see also State v. Burlison, 868 S.W.2d 713, 719 (Tenn. Crim. App. 1993) (holding that once the trial court approves the verdict as the thirteenth juror, appellate review is limited to determining the sufficiency of the evidence.) Here, the defendant's motion for new trial was overruled. The trial court did not express dissatisfaction or disagreement with the verdict. Under these circumstances, the defendant is not entitled to relief.

### III.

As his final issue, the defendant asserts that the trial court erred by failing to consider as a mitigating factor his lack of education and his placement in special education classes as a child.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597, 600 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Comments.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210 (2003); State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

The presumptive sentence for especially aggravated robbery, a Class A felony, is the midpoint in the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c) (2003). If there are enhancement factors but no mitigating factors, the trial court shall set the sentence at or above the presumptive term. Id. § 40-35-210(d). If there are mitigating factors but no enhancement factors, the trial court shall set the sentence at or below the presumptive term. Id. A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Id. § 40-35-210(e). The sentence should then be reduced within the range by any weight assigned to the mitigating factors present. Id.

In arriving at the sentence of twenty years, the midpoint within the range, the trial court applied enhancement factor (2), that the "defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range." Tenn. Code Ann. § 40-35-114(2) (2003). While the defendant asserts that the trial court failed to consider his educational background as a mitigating factor, the record establishes otherwise:

> The only [mitigating factor] that has been presented or is applicable would be under the other factors consistent with the purposes of sentencing, that being the weight, if any, given to this special education. And as has been acknowledged . . . that does not excuse what he's been convicted of or negate the prior convictions that he has. . . . [T]here's no indication that that failure to read or write or the special ed classes had any effect on his inability to understand that it would be against the law to go break into someone's home and beat them during the particular robbery. So I find that factor present, but don't think that excuses the crime for which he's here for sentencing on.

The weight to be assigned to the appropriate enhancement and mitigating factors falls within the sound discretion of the trial court so long as that court complies with the purposes and principles of the 1989 Sentencing Act and its findings are supported by the record. State v. Boggs, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996). In this case, the trial court complied with the principles of sentencing and its findings are supported by the record. Thus, this court may not modify the sentence. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

      Accordingly, the judgment of the trial court is affirmed.

                                        _____

                                        GARY R. WADE, PRESIDING JUDGE