# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs September 19, 2012

## STATE OF TENNESSEE v. EDWARD WILLIAM CRANDALL

### Appeal from the Criminal Court for Loudon County
### No. 2010-CR-208      E. Eugene Eblen, Judge

### No. E2012-00338-CCA-R3-CD-FILED-MARCH 21, 2013

The Defendant, Edward William Crandall, challenges his conviction for aggravated rape of a child, a Class A felony, alleging (1) that the evidence supporting his conviction was insufficient to prove penetration of the victim and to identify him as the perpetrator and (2) that the trial court erred when denying his motion for judgment of acquittal at the end of the State's case-in-chief because the State had failed to prove the victim's age. After reviewing the record and the applicable authorities, we discern no error and affirm the judgments of the trial court. The case is remanded to the Loudon County Criminal Court for correction of the judgments to reflect that service of Count 3 is consecutive to Count 1 and that service of Count 2 is concurrent to Count 1.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed, Case Remanded**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Kent L. Booher, Harriman, Tennessee, for the appellant, Edward William Crandall.

Robert E. Cooper, Jr., Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Russell Johnson, District Attorney General; and Frank Harvey, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND

The record reflects that the Defendant was indicted on July 1, 2010, for aggravated rape of a child, a Class A felony (Count 1); especially aggravated sexual exploitation of a

minor, a Class B felony (Count 2); and aggravated sexual exploitation of a minor, a Class C felony (Count 3). A trial was held on September 20, 2011, and the following evidence was presented.

Detective Daniel Schneider, employed in the Internet Crimes Against Children Division (ICAC) of the Harriman Police Department, testified that in June 2010 he was searching the internet for instances of trafficking child pornography when he discovered that someone located at a residence on Northshore Drive in Lenoir City, Tennessee had been sharing pornographic images of children on the internet. On July 1, 2010, Det. Schneider and other officers executed a search warrant on that address, searching both the home and a camper parked in the driveway, and seized several items. Det. Schneider testified that child pornography was identified on two of the items seized: a media card associated with a digital camera and an IBM Think Pad laptop. He explained that he viewed the media card and "identified the [D]efendant on there and the child and some explicit photos." Det. Schneider determined from viewing the background that the photographs were taken in the camper where the media card was located. Det. Schneider then turned the seized evidence over to Investigator Tom Evans who conducted a forensic examination of the media card and confiscated computers.

Det. Schneider testified that during the search, he interviewed the other occupants of the home and was told that the Defendant lived in the camper; the Defendant was not at home when the search was conducted. Det. Schneider explained that he wanted to interview the Defendant after viewing the media card and determining that it only contained photographs of the Defendant and the child; the child was later identified as the Defendant's son, A.C.[1] After finding out that the Defendant was employed at Weigel's, Det. Schneider asked Inv. Evans to accompany him to the Weigel's to speak with the Defendant about the explicit photographs found on the media card; Detective Jason Joseph of the Harriman police department accompanied Det. Schneider. At Weigel's, the Defendant agreed to accompany Det. Schneider and Inv. Evans to the ICAC office in Knoxville, Tennessee for an interview. During the interview, the Defendant stated that he lived in the camper at the address on Northshore. The Defendant also admitted that he had used Limewire[2] to download teen and preteen child pornography on his computer. Det. Schneider testified that they described to the Defendant the images that they had found of him and his son on the media card, and the Defendant started crying. According to Det. Schneider, when asked about the images, the Defendant said that

---

[1] This court refers to child victims by their initials.

[2] Det. Schneider explained that Limewire was file sharing software that people downloaded on their computer to share information, typically illegal images, videos, or movies, with other people on the internet.

he had been to the park with his son, came home. His child was dirty, gave him a bath, he came out of the bath, he was naked. He admitted to us that he got kind of excited, that he had - had visions of a - an abuse that occurred earlier in his life by - I believe it was his grandfather, one of his grandfathers. He got curious of what it felt like; he said he did put his penis up against and next to his [two-year-old son's] butt.

When asked how the child reacted, the Defendant told Det. Schneider that "the child just laid there" and "kind of giggled or laughed." After the interview, the Defendant wrote the following letter to his son:

Adam, I love you so much. I'm sorry about what all you are going through. I wish I could . . . take back what I did that day. I am so sorry Adam. You mean the world to me. Adam, Daddy really, really sorry for putting you in this. I'll love you alway if I don't get to see you anymore.

Just so you know, you are the best thing that has ever happened to me. Daddy's going to get help buddy. I want to see you grow up in life. Please forgive me. I'm truly sorry. I don't know when I will . . . get to see you again but I want you to know I love you so much and that will never change. I love you. Daddy going to get help. Daddy needs it. Love always, Daddy.

Months later, Det. Schneider received a letter from the Defendant asserting his innocence and alleging that someone had threatened him not to tell the officers "who downloaded the child pornography" or he "would have no place to stay" and that he "would have to watch his back because his life would be hell." The Defendant stated that he had "dropped hints" during the interview but that Det. Schneider and Inv. Evans did not catch them. He apologized for "not being truthful" and requested to speak with them again in the presence of his attorney. Det. Schneider testified that the Defendant neither dropped any hints nor insinuated that anyone else was involved in any way in downloading the child pornography nor did he allude to anybody or anything thing else during the interview.

Det. Schneider admitted on cross-examination that the interview with the Defendant taken in the ICAC Knoxville office was not recorded but explained that it was ICAC Harriman's policy not to record interviews. Det. Schneider also admitted that they could not identify the man in what is referred to as the "pen[ile] penetration photograph" but that the Defendant "admitted that he took a picture of one of the times he did it" during the interview at ICAC Knoxville. Det. Schneider denied that the Defendant ever mentioned during the interview that he had a prior arrest for a domestic violence charge for kicking in the door of his son's mother's home one day.

-3-

Det. Schneider testified on re-direct that the Defendant just mentioned his brother, Christopher Crandall, as a potential suspect for the first time at trial and that officers had never been told by anyone living in the home that Christopher Crandall resided there. Det. Schneider also testified that the Defendant was the only person with internet access at the Northshore address who admitted to downloading child pornography to a computer.

Inv. Evans, employed in the ICAC division of the Knoxville Police Department, was qualified as an expert in computer, electronics, and online evidence collection and evaluation. He testified that he received a phone call from Det. Schneider asking for his assistance in interviewing the Defendant and examining a media card and other evidence that Det. Schneider had recovered during a search of the Defendant's residence. Inv. Evans explained that Det. Schneider had previewed the media card and that he believed the card contained explicit photographs of a child victim located in Loudon County. Inv. Evans testified that he met Det. Schneider at the Defendant's job where the Defendant agreed to come to the ICAC Knoxville office for an interview. Upon his arrival, the Defendant was given his Miranda rights, and he executed a waiver of those rights. The Defendant was then informed about the items recovered during the search, the images of his son that were found on the media card, and the officer's suspicion that someone at the residence was downloading and distributing child pornography on a computer.

Inv. Evans testified that when he told the Defendant about the images of his son located on the media card recovered in the camper, the Defendant "broke down" and "started to cry." When asked what led him to take the photos of his son, the Defendant explained that after he and his son returned from the park, he was changing his son's pull-up, and his son started running around the camper naked. The Defendant stated that he put his son on the couch and "got curious." According to the Defendant, his

> abuse "came back to [him,]" and he "wanted to see how it would feel." He stated that his son just laid there and did not cry. His son giggled. [The Defendant] stated that his son was completely nude. He stated I rubbed my penis around and near his butt, I never tried going in. He stated that he didn't know why he took the pictures of the abuse. [The Defendant] stated that they went back outside so he would not be tempted again.

Inv. Evans testified that, during a break, the Defendant told him, "I'm going to jail, I'll never see my son again, I've lost a place to stay. I hate myself." After the interview, Inv. Evans reviewed the images on the computer and the media card for the first time. Inv. Evans testified that the images on the media card were taken with a camera similar to the Nikon Cool Pix camera seized from the Defendant's camper. According to Inv. Evans, the media card was found either under the Defendant's mattress or in his bedding during the search.

Inv. Evans printed the images from the media card and presented a folder containing those photographs at trial. On the IBM Think Pad computer, identified as belonging to the Defendant, Inv. Evans located 200 images and 25 videos of child pornography downloaded from LimeWire. Inv. Evans also concluded that the Defendant was the primary or only user of the computer containing these images based on the email history and MySpace information found on the computer and that none of the other computers seized contained any file sharing software or child pornography.

The Defendant's mother testified that at the time of the incident, there were five people living in the home: herself, her father, her mother, the Defendant, and her other son, Christopher. She explained that Christopher and the Defendant lived in the camper and that she often stayed in the camper when she was not needed in the home to care for her sick mother. Ms. Meeler testified that Christopher also used the IBM Think Pad, the computer that the child pornography was found on. When Ms. Meeler was shown the "pen[ile] penetration photograph," she explained that the man in the photograph was not the Defendant because in May 2010 the Defendant developed a big scar in that area after an ingrown hair became infected. She also explained that the Defendant has two brown birthmarks on the top of his penis but admitted that the photograph does not show it from that angle.

The Defendant also testified in his defense. The Defendant stated that he signed the waiver of his Miranda rights before he knew what the officers wanted to discuss with him. When asked about the letter he wrote to his son, the Defendant testified that his apology was in reference to an incident where he kicked his son's door in because the child's mother would not let him in to see his son. The Defendant explained that he thought he would not be able to see his son for a while because the officers had told him that he was not leaving, but he later stated that the officers told him that he could leave if he wrote the letter. The Defendant insisted that he never told the officers that he raped his son or that he downloaded child pornography from the internet. He explained that he cried during the interview because Inv. Evans "slammed a pen down on the desk and told me that I needed to tell him everything. And, I took that as a threat because of the way my childhood used to be." The Defendant stated that he was not quite sure what Inv. Evans meant by "tell him everything." The Defendant testified that he was afraid to tell officers "who did the downloading" – his brother, Christopher – because Christopher, who was supposed to be in "state's custody," was on the run from "the law." According to the Defendant, his brother had a "mean streak." The Defendant testified that the Nikon camera, which the photographs on the media card were taken with, belonged to Christopher, explaining that he had given the camera to his child's mother who sold the camera to Christopher for extra money. The Defendant also testified that he had left his son alone with his brother in the past because he was called in to work to cover someone else's shift.

The State offered the testimony of Detective Jason Joseph, employed with the Harriman City Police Department, as a rebuttal witness. Det. Joseph explained that he assisted in Det. Schneider's investigation of this case and that he observed the Defendant's interview at ICAC Knoxville. Although he admitted that he did not remember every detail of the interview, he recalled that the Defendant started crying when officers asked about the photographs and that the Defendant admitted to assaulting A.C. Det. Joseph also stated that he did not recall the Defendant exhibiting any concern for the well-being of the child. Det. Joseph also testified that Det. Schneider does not require confessions to be written down, but the opportunity was typically given, and that he did not recall their department recording interviews in the past.

The jury convicted the Defendant of all three counts. The trial court sentenced the Defendant to serve forty years for the aggravated rape of a child conviction (Count 1), to be served consecutive to Count 3; eight years for the especially aggravated sexual exploitation of a minor conviction (Count 2), concurrent to Count 1; and four years for the sexual exploitation of a minor conviction (Count 3); for a total effective sentence of forty-four years in the Department of Correction.

ANALYSIS

The Defendant contends that (1) the State failed to present sufficient evidence to identify him as the perpetrator and to prove penetration of the victim and (2) that the trial court should have granted the Defendant's motion for judgment of acquittal at the end of the State's case-in-chief because the State had not proven that the victim was three years of age or less at the time of the offense, as required by statute.[3] The State responds that the evidence presented in its case-in-chief was sufficient to support the Defendant's conviction because it proved that the Defendant anally penetrated the victim and that he told officers that the victim was two years old when the penetration occurred.

*A. Trial Court's Denial of Motion for Judgment of Acquittal*

Regarding this issue, the Defendant alleges that the trial court committed reversible

_____

[3] The Defendant only challenges the sufficiency of the evidence regarding his aggravated rape of a child conviction. As such, he has waived review of his convictions for especially aggravated exploitation of a minor and aggravated exploitation of a minor for failure to raise them on appeal. See Tenn. R. App. P. 13(b).

error when it denied the Defendant's motion for judgment of acquittal at the close of the State's proof because the evidence presented did not establish the age of the victim and, therefore, was insufficient to sustain his conviction for aggravated rape of a child.

Rule 29 of the Tennessee Rules of Criminal Procedure governs motions for judgments of acquittal. It provides, in relevant part, as follows:

> On defendant's motion or its own initiative, the court shall order the entry of judgment of acquittal of one or more offenses charged in the indictment, presentment, or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

Tenn. R. Crim. P. 29(b). This rule gives the trial court authority to direct a judgment of acquittal, either at the close of the State's proof or at the conclusion of all the evidence, when the evidence is insufficient to support a conviction. See State v. Gilley, 297 S.W.3d 739, 762 (Tenn. Crim. App. 2008). In determining whether to grant a motion for judgment of acquittal, "the trial court must favor the opponent of the motion with the strongest legitimate view of the evidence, including all reasonable inferences, and discard any countervailing evidence." Id. (citing Hill v. State, 470 S.W.2d 853, 858 (1971)). The trial court applies the same standard employed on appeal when analyzing the sufficiency of the evidence. Id.

To restrict appellate review of the motion for acquittal to the evidence presented by the State, once the motion is made, the defendant must stand on the motion and present no other proof. See Gilley, 297 S.W.3d at 763; State v. Ball, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998); State v. Johnson, 762 S.W.2d 110, 121 (Tenn. Crim. App. 1988); Mathis v. State, 590 S.W.2d 449, 453 (Tenn. 1979). A motion for a judgment of acquittal made at the conclusion of State's proof is waived when the defendant elects to present evidence on his own behalf. Id. This court may not return to the midpoint of the trial and then order the trial court to direct a judgment of acquittal upon the basis of the record as it then existed. See State v. Thompson, 549 S.W.2d 943, 945 (Tenn. 1977).

In the instant case, the Defendant chose to present evidence after the trial court denied his motion for judgment of acquittal. Therefore, our review of the sufficiency of the evidence supporting his conviction for aggravated rape of a child will be based on the proof presented at trial by the State as well as the Defendant. See Gilley, 297 S.W.3d at 763.

## B. *Sufficiency of the Evidence*

An appellate court's standard of review when the defendant questions the sufficiency

of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). The court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. <u>See State v. Sheffield</u>, 676 S.W.2d 542, 547 (Tenn. 1984); <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. <u>See State v. Bland</u>, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." <u>Bland</u>, 958 S.W.2d at 659; <u>State v. Tuggle</u>, 639 S.W.2d 913, 914 (Tenn. 1982). "This [standard] applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." <u>State v. Pendergrass</u>, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). The standard of proof is the same, whether the evidence is direct or circumstantial. <u>State v. Dorantes</u>, 331 S.W.3d 370, 379 (Tenn. 2011). Likewise, appellate review of the convicting evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" <u>Id.</u> (quoting <u>State v. Hanson</u>, 279 S.W.3d 265, 275 (Tenn. 2009)). The duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." <u>State v. Sisk</u>, 343 S.W.3d 60, 67 (Tenn. 2011).

*1. Aggravated Rape of a Child Conviction*

The Defendant challenges the sufficiency of the evidence supporting his conviction for aggravated rape of a child, specifically alleging that the State failed to prove that the victim was three years old or less, that the Defendant was the perpetrator, and that the victim was penetrated. The Defendant was convicted of aggravated rape of a child pursuant to Tennessee Code Annotated section 39-13-531. That statute states as follows:

> (a) Aggravated rape of a child is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is three (3) years of age or less.

> (b) Aggravated rape of a child is a Class A felony and shall be sentenced within Range III, as set forth in title 40, chapter 35.

Id.

### a. Proof of the Victim's Age

The Defendant contends that the State failed to prove the victim's age, as required by statute. However, as previously mentioned, we will examine this issue based on all the evidence presented at trial because the Defendant elected to present evidence after the trial court denied his motion for judgment of acquittal.

After a thorough review of the record and applicable authorities, we conclude that the evidence presented at trial proved that the victim was two years old at the time of the offense, and thus, was sufficient to support the Defendant's conviction for aggravated rape of a child. During its case-in-chief, the State presented the testimony of Det. Schneider who stated that during the interview with the Defendant, he showed the Defendant a picture which depicted a man who appeared to be anally penetrating a child's anus. According to Det. Schneider, the Defendant admitted that the child in the photograph was his son, A.C., and that A.C. was two years old when the picture was taken. On cross-examination, the Defendant also admitted that A.C. was two years old when the photographs on the media card were taken. The other pictures of A.C. from the media card support this conclusion. Thus, there was sufficient evidence presented at trial for the jury to conclude that A.C. was under three years of age, as required by statute, when the offense occurred. See id. The Defendant is not entitled to relief on this sub-issue.

### b. Proof that the Defendant was the Perpetrator

The Defendant contends that there was insufficient evidence presented at trial to prove that the Defendant was the man depicted in the "pen[ile] penetration" photograph used to convict the Defendant of aggravated rape of a child; we disagree.

As the State succinctly argues, although the officers could not independently verify that the Defendant was the man pictured in the photograph, there was sufficient circumstantial evidence presented at trial for the jury to conclude that the Defendant was the man in the photograph. Inv. Evans, qualified as an expert in computer electronics and online evidence collection and evaluation, testified that the media card on which the photograph was found was located in the Defendant's sleeping area underneath his mattress. Det. Schneider testified that he identified only the Defendant and A.C. in the photographs on the media card and that he had also determined by viewing the background of photograph that it was taken in the camper where the Defendant resided. Det. Schneider and Inv. Evans both testified that when the Defendant was asked about the "pen[ile] penetration" photograph, he identified A.C. as the victim in the photograph and admitted to placing his penis on A.C's buttocks.

As such, the Defendant is not entitled to relief on this sub-issue.

### *c. Proof that the Victim was Penetrated*

Finally, the Defendant contends that the State failed to present sufficient evidence that the victim was penetrated, explaining that the photograph does not show actual penetration and that the Defendant denied confessing to officers that he assaulted his son.

Tennessee Code Annotated section 39-13-501(7) defines sexual penetration as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required[.]" Id. (emphasis added).

Although, the Defendant argues that the photograph does not show penetration and that he never told the officers that he penetrated the victim, penetration can be proven circumstantially. State v. Brown, 749 S.W.2d 474, 476 (Tenn. Crim. App. 1987) (citing Greene v. State, 358 S.W.2d 306 (Tenn. 1962); State v. Fears, 659 S.W.2d 370 (Tenn. Crim. App. 1983)). According to Det. Schneider and Inv. Evans, the Defendant admitted to taking "bath time" photographs of A.C. When confronted about the photograph of a man with his penis on a boy's naked buttocks, the sobbing Defendant said that he had taken A.C. to the park that day and that A.C. had gotten dirty, so he went home and gave A.C. a bath. The Defendant admitted to both Inv. Evans and Det. Schneider that he became excited at seeing A.C. naked, and he rubbed his penis on A.C.'s "butt." We conclude that the foregoing circumstantial evidence and the image depicted in the photograph at issue support the jury's finding that there was sexual penetration of the victim. Therefore, the Defendant is not entitled to relief on this sub-issue.

### CONCLUSION

For the foregoing reasons, we affirm the judgments of the trial court.

_____
D. KELLY THOMAS, JR., JUDGE